Bajandas Yélez, Juez Ponente
*902 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos San Gerónimo Caribe Project, Inc. (la recurrente, SG o Proyecto Paseo Caribe) en el recurso de revisión administrativa de epígrafe. Nos solicita que revoquemos la Resolución y Orden emitida y notificada por la Administración de Reglamentos y Permisos (ARPE) el 27 de diciembre de 2007. Por medio de dicho dictamen, la ARPE suspendió los efectos de los permisos de construcción concedidos para el Proyecto Paseo Caribe por un término de 60 días y ordenó la paralización de cualquier obra de construcción que se estuviese llevando a cabo en los predios del aludido proyecto que no contara con un permiso de uso autorizado por dicha agencia. También, determinó que la orden podría ser prorrogada de así ameritarlo el interés público.
Analizado el recurso y el derecho aplicable, resolvemos modificar la Resolución y Orden recurrida a los fines de ordenar a ARPE que celebre una vista evidenciaría a la brevedad posible, y así modificada, confirmarla.
I
Mediante la Décima Extensión a la Consulta Número 99-79-0155-JPU emitida el 12 de enero de 2000, la Junta de Planificación (la Junta) aprobó la ubicación de un proyecto mixto residencial, comercial y turístico en unos terrenos adquiridos por SG conocidos como la “Coast Guard Parcel” y una porción de la “Condado Boy Parcel” en los cuales se construye el Proyecto Paseo Caribe. Tomamos conocimiento judicial de que la aprobación de dicha consulta fue objeto de múltiples acciones judiciales, cuyo desenlace, final y firme al día de hoy, fue la aprobación de la consulta en su totalidad. Entrado el caso en la etapa operacional, pasó a la ARPE para velar porque el desarrollo propuesto cumpliera con todas las leyes y reglamentos, así también con los permisos otorgados. Durante los pasados siete años, la ARPE ha ejercido su jurisdicción. Dos de los permisos otorgados fueron objeto de revisión judicial por este Tribunal el 19 de diciembre de 2002, ICLRA-2002-00145. El Proyecto Paseo Caribe comenzó a construirse con una inversión que, según alega la recurrente en su escrito de revisión judicial, excede los $300,000,000 y está en sus etapas finales.
Tomamos conocimiento judicial, además, de que después de comenzada la construcción, mediante Resolución del Senado 2364 de 22 de junio de 2006, se inició una investigación sobre el acceso al Fortín San Jerónimo del Boquerón que quedaba enclavado dentro del proyecto. Podemos también tomar conocimiento judicial de que la controversia se expandió a extremos que incluyeron, protestas de distintos grupos ciudadanos y *903 obreros del mismo proyecto.
El 11 de diciembre de 2007, el Secretario de Justicia, Hon. Roberto J. Sánchez Ramos, emitió una Opinión relacionada con la Consulta Núm. 07-130-B, que se describe como una investigación del Departamento de Justicia sobre “el desarrollo y los trámites de permisología relativos a un complejo proyecto de construcción localizado en la entrada de la Isleta de San Juan, popularmente conocido como el Proyecto Paseo Caribe ”. 
La Opinión concluyó, en síntesis, que una porción del Proyecto Paseo Caribe ubica en terrenos ganados al mar. Por lo tanto, al formar parte de la zona marítimo-terrestre, dichos terrenos son de dominio público y no pueden ser objeto de enajenación “sin autorización expresa y específica” de la Asamblea Legislativa.
Entre otras cosas, el Secretario recomendó a la Junta que ejerciera sus funciones de conformidad con el Art. 11 (14) de su ley habilitadora, 23 L.P.R.A., sec. 62j (14) —que la faculta a “hacer determinaciones sobre usos de terrenos dentro de los límites territoriales del Estado Libre Asociado, con sujeción a las normas y requisitos consignados en este Capítulo [Ley] o en cualquiera otra ley aplicable, para tales casos”, y los incisos (8) y (9) de esa misma norma —que la faculta a emitir “órdenes provisionales ” y “órdenes de hacer o no hacer y de cese y desistimiento”, para que se implante la nueva interpretación estatutaria que le llevó a esa conclusión. También recomendó a la ARPE que, de conformidad con la Sección 19 de su Reglamento de Procedimientos Adjudicativos, Núm. 6435 de 16 de abril de 2002, iniciara un proceso de revocación de los permisos otorgados.
El 14 de diciembre de 2007, la Junta emitió una Resolución en la que decidió:

“1. Ordenar a las partes que en un término de cinco (5) días laborables se expresen sobre la Opinión del Secretario de Justicia, ante.

2. Solicitar al Departamento de Recursos Naturales y Ambientales que en un término de cuarenta y cinco días (45) naturales realice y presente a esta Junta un nuevo deslinde de los terrenos objeto de controversia para que se establezca, de manera consistente con la Opinión del Secretario de Justicia, supra, la zona marítimo-terrestre en el área, así como las correspondientes servidumbres de salvamento y vigilancia litoral aplicables.
3. Ordenar a la Administración de Reglamentos y Permisos que tome las medidas cautelares, que considere necesarias, para implementar las recomendaciones del Secretario de Justicia, incluyendo, pero sin limitarse, el celebrar una vista administrativa, donde se garantice a las partes el debido proceso de ley. ” (Enfasis nuestro) 
Ese día, 14 de diciembre de 2007, la ARPE emitió una “Orden para Mostrar Causa” dirigida a la recurrente. Le ordenó comparecer a una vista administrativa, en cinco días, para que mostrara causa “por la cual no se deba dictar una orden dejando en suspenso los permisos y decretando la paralización de las obras de construcción que se están llevando a cabo en los predios de los casos aquí en controversia por un término de sesenta días”. 
La orden invocó la Sección 3.17 de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A., see. 2167, sobre “Procedimiento Adjudicativo de Acción Inmediata”. La agencia justificó su selección del proceso a seguir así:

“A tenor de la Sec. 3.17 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. See. 2167, las agencias pueden celebrar procedimientos adjudicativos con carácter expedito cuando exista un peligro inminente para la salud, la seguridad y el bienestar público o cuando se requiera una acción inmediata por parte de la agencia. Luego de la Opinión emitida por el Secretario de Justicia han surgido interrogantes sobre la titularidad de los terrenos donde ubica el Proyecto Paseo Caribe. A su vez, se han generado varios incidentes que pueden afectar la seguridad del 
*904
personal de dicho proyecto y de los ciudadanos que se han estado manifestando en las inmediaciones de los terrenos. Asimismo, la conclusión de la mencionada Opinión a los efectos de que algunos de los terrenos ocupados por el Proyecto Paseo Caribe son de dominio público, demuestran la existencia de un alto interés público en la reevaluación de los endosos de dicho proyecto a fin de salvaguardar los derechos de los proponentes y desarrolladores así como los recursos del Pueblo de Puerto Rico. ” 

AI inicio de la vista convocada, la licenciada Loyda Rosas Negrón, Oficial Examinadora designada por la ARPE, expresó para récord:
“[QJueremos aclarar que la naturaleza de la vista no es una adversativa. Vamos a recopilar información de acuerdo a la Orden que se emitiera por esta Administración de Reglamentos y Permisos para que esta Agencia pueda tomar una determinación sobre la Orden de Paralización de las construcciones que se están llevando a cabo. No vamos a hablar de la validez de los permisos otorgados, y la naturaleza de la Vista, como dijimos anteriormente, no es adversativa. ” (Enfasis nuestro) 
SG sometió entonces una moción de desestimación. Así lo expresó su representante legal:

“[...] la distinguida Oficial Examinadora ha mencionado para el récord al comienzo de la Vista que este no es un procedimiento adjudicativo, que es un procedimiento de recoger información. Nos parece precisamente con lo que ha leído el distinguido Oficial Examinador que es todo lo contrario, que es un procedimiento adjudicativo que aunque no se define de esa manera, el efecto es la adjudicación de unos derechos de nuestro cliente, y eso requiere y exige unas garantías de debido proceso legal.

[...]

En virtud de que entendemos que es un proceso cuasiadjudicativo o de adjudicación de derechos específicos, estamos presentando en la mañana de hoy una moción de desestimación porque entendemos que el ARPE, la Administración de Reglamentos y Permisos no tiene jurisdicción para este tipo de Vista, y que la forma y manera en que se ha establecido la misma constituye un craso, una crasa violación a los derechos de debido procedimiento de ley de nuestro representado.

[...]

En virtud de que entendemos que ARPE no tiene jurisdicción para este tipo de procedimiento, y quiero brevemente señalar el fundamento principal aparte de los problemas de debido procedimiento de ley, y estamos, y quisiéramos argumentar para los efectos el fundamento para esa solicitud de desestimación.

Pero principalmente es que se trata de una cuestión de umbral, que es la determinación de la titularidad de unos terrenos o porciones de terrenos en donde se construye el Paseo Caribe en este momento, que por supuesto incluye una variedad de edificios que hace tiempo que están construidos, algunos de ellos totalmente ocupados y otros parcialmente ocupados donde hay personas que los viven o que los utilizan, que lo que se está construyendo es una parte de ese proyecto en cuestión.

Pues, se trata de una cuestión de umbral, que es la titularidad de esos terrenos. La premisa esencial con la que la agencia está tomando las acciones que está tomando. Y esa determinación de la titularidad como lo reconoce y admite el Secretario de Justicia en su opinión, y como lo ha expresado en múltiples ocasiones el Gobernador de Puerto Rico, Honorable Aníbal Acevedo Vilá, esa determinación es una determinación judicial. Son los Tribunales de Justicia constitucionales en Puerto Rico los únicos que pueden determinar la titularidad.

[...]’’. 

*905 El otro oficial Examinador, licenciado José Pérez Ayala, después de un receso dispuesto para estudiar la moción contestó:

“Okey. Reconociendo los méritos que pueda tener la moción de Desestimación que está solicitando el concesionario a través de sus abogados de la que ARPE carece de jurisdicción sobre casos de titularidad, tenemos primero, que eso no es lo que se va a estar ventilando dentro de esta audiencia. Por tanto, no ha lugar y vamos a continuar con los procedimientos. ” 

Entonces se suscitó el siguiente intercambio, cuyas partes más sobresalientes precisa citar:
"[...].

Según escuché, su determinación [de denegar la moción de desestimación] se basa mayormente en que el propósito de los procedimientos para los cuales nos han indicado que comparezcamos en el día de hoy no dirigir la titularidad de los terrenos. Entendemos que ése es el fundamento base, el primordial, por la cual solicitamos la desestimación, pero en realidad hay otros aspectos de carácter constitucional, específicamente de debido proceso de ley, sobre la notificación, que a nuestro entender, la jurisprudencia aplicable y la propia Ley de Procedimiento Administrativo Uniforme obligan a que esta Junta, ah, ARPE, perdone, que paralice los procedimientos y cancelen la vista de hoy y desistan del procedimiento adjudicativo, según se notifica en esta Orden.

El que consideramos de mayor importancia, como bien surge de la Orden, la cual nos fue notificada, se hace referencia a un número con una cantidad significativa de permisos que fueran otorgadas a San Gerónimo Development y hay un asunto que varios de esos permisos envuelven la autorización para crear un régimen de propiedad horizontal, condominios, en lo que se llama el Condominio Lagoon Village, que era al lado del Caribe Hilton. 

[...]

Pero no sólo eso, también en la Orden no se menciona de que nuestro cliente haya violado alguna ley, aunque ustedes tampoco dijeron que aquí no hay un asunto sobre los permisos, pero la notificación para comparecer, la que da inicio a la Vista, carece de otros requisitos esenciales del debido proceso de ley, que ustedes nos notifiquen exactamente cuál es el fin para el cual venimos aquí, de qué nos vamos a defender y la Orden para Mostrar Causa carece de esos elementos en esa notificación.

Finalmente, me dirijo al asunto del término de cinco días que nos otorgaron para que viniéramos aquí a mostrar causa por las cuales los permisos no debían dejarse sin efecto, según la Orden, esta Vista está citada a tenor de la Sección 3.7 de la Ley Número 170, del 12 de agosto de 1988, que es la Ley de Procedimiento Administrativo Uniforme. Esa es la sección que permite que una agencia, por razones bien particulares, acorte los términos que su Reglamento y que la propia Ley de Procedimientos Administrativo Uniforme establece para que señalen vistas.

[■■■]

Por lo tanto, entendemos de igual forma, y añadimos a las razones ya dichas, que hay varias violaciones a las normas del debido proceso de ley, que se desprenden de la propia notificación, que ameritan que en este instante se paralice la Vista y se desestime el proceso adjudicativo que se ha iniciado mediante esta notificación.

[...]

*906
OFICIAL EXAMINADORA:

Su objeción está debidamente consignada para récord. Si ustedes no desean presentar ningún argumento en contra de la Orden que emitiera ARPE, es su prerrogativa, si ustedes así lo, lo determinan. Quiero aclararles que la ARPE sí tiene jurisdicción sobre el desarrollo al momento en que se inicia el procedimiento para emitir los permisos. Tiene jurisdicción y continúa su jurisdicción para fiscalizar esos permisos emitidos, por lo que sí existe jurisdicción.

De ustedes no querer aportar ningún argumento en el procedimiento, no...

LCDO. SÁNCHEZ BETANCES:

Sí, pero déjeme aclararle algo para el récord. En primer lugar, no es que no queramos aportar nada en respuesta a eso, porque precisamente le estamos diciendo que estamos sometiendo la Moción de Desestimación con sus anejos y en esos anejos consta la posición nuestra en relación al tema que trae ARPE en su orden. (...)

Segundo, el planteamiento de que no hay jurisdicción es porque lo que va a dirimir, lo que parte de la premisa, lo que parte de la premisa esta agencia para tomar la determinación, que se expresa en la Orden, es una opinión del Secretario de Justicia. Que en un procedimiento cuasiadjudicativo como este no es prueba y que no puede, no puede, bajo ningún concepto, entendemos respetuosamente nosotros, servir de base para ninguna actuación de naturaleza adjudicativa, donde derechos adquiridos y de propiedad no solamente de parte de nuestro cliente, sino como se expresó ya para el récord, de los condómines o condominos de ese condominio y su Junta de Titulares y los condominos que ya viven en Caribe Plaza, y que son residentes y adquirieron conforme a lo que surge del Registro, y que no estén notificados aquí y que no estén presentes aquí para defenderse y para impugnar cualquier acción que pueda tomar la Junta, que ha advertido que trata de esos permisos en particular, no sabemos cómo es posible que piensen que no tengan que estar aquí presentes, como parte indispensables y con derechos constitucionales a base de lo que la agencia dirima.

Pero tratándose de un procedimiento adjudicativo, no puede tomar en consideración prueba fuera del récord administrativo, y para que esté en el récord administrativo, tiene que estar aquí y presentarse para que sea elemento de prueba, ¿ve?

Y la opinión del Secretario de Justicia, que es la que nutre la acción que está tomando la agencia y que parte de esa determinación, como si fuera una adjudicación, cuando el propio Secretario reconoce que él no puede determinar quién es el titular, cualquier procedimiento que tome a cabo la Junta, ARPE, a base de esa determinación, es fuera de su jurisdicción.

[...]

Porque que yo sepa, las agencias administrativas tienen dos funciones, administra... cuasilegislativas y cuasiadjudicativas. Y esto evidentemente no es un proceso reglamentario. Es un proceso donde van a adjudicar derechos de partes que tienen derechos adquiridos bajo esos permisos. Eso es adjudicar, eso es una función judicial. Y el elemento es la titularidad respetuosamente, nuevamente, quien único pude decidir eso es el Tribunal.

Es decir, no hay ninguna prueba que yo le pueda presentar a usted hoy día, que la agencia, ARPE, pueda a base de esa prueba o de la que presente cualquier otra persona aquí hoy, decir “Tales terrenos son o no son de dominio público”. Eso es un hecho de... o un derecho, una cuestión de derecho sobre titularidad.

Y si la premisa, que tiene que ser, yo creo que respetada por toda agencia gubernamental, es que el que aparece como titular en el Registro de la Propiedad es el dueño, ustedes tienen que tomar conocimiento administrativo, oficial, de que el Registro de la Propiedad refleja que la corporación y/o los titulares de los 
*907
terrenos en desarrollo o en vivienda allí son los que dice el Registro. Que ese es un hecho, hoy, incontrovertido y está en el Registro.

Entonces, ¿qué prueba es la que ustedes quieren que nosotros le presentemos para demostrar que eso no es así? Si lo que dicen es que los permisos no están siendo impugnados y que los permisos no están siendo evaluados. Y si es verdad que los permisos no están siendo evaluados, entonces asumir jurisdicción a base de que tiene jurisdicción por los permisos, es otra contradicción. Porque si los permisos no están en juego, los permisos no están siendo impugnados, y entonces no son los permisos, pues es la titularidad, y eso es el Tribunal.

OFICIAL EXAMINADORA:

Quiero aclararle al compañero que reconocemos que no tenemos jurisdicción con respecto a titularidad...

LCDO. SÁNCHEZ BETANCES:

Eso es cierto.

OFICIAL EXAMINADORA:

Pero quiero también aclararle al distinguido abogado que cuando la agencia emite un permiso, nunca pierde la jurisdicción sobre dicho permiso. Nunca lo pierde.

LCDO. SÁNCHEZ BETANCES:

¿Cómo que nunca lo...

OFICIAL EXAMINADORA:

Si esta agencia es la que por facultad legislativa está... ha sido delegada para otorgar ese tipo de privilegio, denomina ese permiso, esta facultad sí tie... esta agencia sí tiene la jurisdicción para entrar y analizar y revaluar lo otorgado.

Por tanto, no ha lugar. Vamos a continuar el procedimiento.

[■■■]

OFICIAL EXAMINADORA:

Durante el receso estuvimos revisando nuevamente la Orden que emitiera la ARPE para mostrar causa. En relación a los planteamientos que nos traen los compañeros sobre la falta de notificación, nosotros entendemos que la Orden tiene un apercibimiento claro que qué es lo que se pretende llevar a cabo con esta Vista. La opinión del Secretario de Justicia incluye una conclusión jurídica sobre la titularidad de los terrenos que... sobre los que la ARPE otorgó las autorizaciones.

En nuestra posición fiscalizadora, la ARPE tiene que velar porque las autorizaciones que haya emitido se, se le otorguen a quien le corresponde la titularidad de ese, de ese predio de terreno. Aquí con la opinión del Secretario se ha... ha surgido una duda sobre la titularidad de esos terrenos, y en vista de ello, la validez de nuestros permisos también se cuestionan.

En vista de que lo que tenemos es una duda y no hay una certeza sobre la titularidad de esos terrenos, la ARPE se propuso tomar medidas cautelares sobre esos terrenos. Por eso es que al principio de este procedimiento le indicamos a los compañeros que no se trataba de verificar la validez de los permisos en el sentido de que de esta Vista surgiera una posible revocación, sino ver qué... la medida cautelar de ordenar la paralización de los te... de las construcciones que se estén llevando a cabo allí ante la posibilidad de que se continúe construyendo sobre terrenos de uso público.

*908
La Vista que estamos celebrando aquí hoy le da la oportunidad al proponente de explicamos qué, qué edificios de los que hay allí pueden estar fuera de esos terrenos que se indican que puede ser como de uso público, como el que hace un momento nos mencionaron, que ya está sometido al régimen de propiedad horizontal, pues ese no sería incluido en la, en la, en la medida cautelar, pero tienen la oportunidad de, de demostrarle a la ARPE porqué no debe ordenarse la paralización provisional de ese proyecto mientras se dilucida en el foro correspondiente el asunto de titularidad. (...)

[...]

LCDO. SÁNCHEZ BETANCES:

Ese, ese es el planteamiento y yo no tengo, no tengo el peso de la prueba. Yo no estoy obligado a traerle prueba alguna a ustedes. Ese es el planteamiento esencial donde reside la falta de jurisdicción y la agencia no me puede obligar a mí a probarle algo o en negativo, el negativo es imposible de probarlo. El registro dice que el concesionario es el dueño. No hay prueba absolutamente... el que opine el distinguido Secretario de Justicia no es evidencia y menos en un foro donde los derechos del concesionario van a ser sustancial y gravemente impactados con una orden de esa naturaleza.

Y si entiendo bien y, por favor, créame, que es tratando también de entender, que, por lo que han expresado, ¿significa que a base de lo que ustedes vayan a recibir, van emitir una orden de paralización, es decir, una revocación de los permisos?

OFICIAL EXAMINADORA:

No es una revocación.

LCDO. SÁNCHEZ BETANCES:

Es una revocación, son sesenta días de paralización. Está dejando sin efecto algo que está en curso y que se está construyendo. ¿Cuál es el efecto de eso? ¿Y no impacta esos derechos específicos del concesionario y de todas las demás personas? Precisamente y para el récord, Fuentes versus Shevin, 407-US-67, un caso de 1972, del Supremo de los Estados Unidos, y hay unos derechos adquiridos, que esa suspensión equivale a una revocación.

[...]

OFICIAL EXAMINADORA:

¿Debemos entender, entonces, que la posición del proponente va a quedar sometida por los documentos que se nos han presentado y por los que se van a complementar en la tarde de hoy?

LCDO. SÁNCHEZ BETANCES:

Técnicamente hablando, señora Examinadora, nosotros no estamos dando por sometido los méritos del asunto, nosotros estamos cuestionando la jurisdicción y tenemos una moción de desestimación que eso, en forma especial y sin someternos a la jurisdicción, estamos presentado. ¿ Qué de esos documentos surja la información que le estoy diciendo?, yo creo que sí, que surge, porque es lo que le estamos sometiendo al Tribunal, pero como cuestión técnica y de derecho, no nos estamos sometiendo a la jurisdicción, estamos presentado la moción, con esa moción vienen todos esos documentos y de ahí verán los méritos del planteamiento.

[...]"

Terminada la vista argumentativa celebrada el 20 de diciembre de 2007, ARPE emitió el 27 de igual mes y año la Resolución y Orden aquí impugnada. Formuló las determinaciones de hechos y conclusiones de derecho que se expresan a continuación:

*909
“Al momento de evaluar las distintas solicitudes, esta Administración de Reglamentos y Permisos tuvo ante sí una serie de hechos y documentos cuya validez no había sido cuestionada, en los cuales basó sus determinaciones.

Como resultado de una investigación realizada por la Asamblea Legislativa del Estado Libre Asociado de Puerto Rico, a través de la Resolución del Senado 2364, donde solicitó la intervención del Secretario del Departamento de Justicia, éste determinó mediante Opinión del Secretario del Departamento de Justicia bajo la consulta número 07-130-B del 11 de diciembre de 2007 que parte de los terrenos donde ubica el proyecto de epígrafe se encuentra dentro de la zona marítimo-terrestre, por lo que no eran susceptibles de pasar a propiedad privada por quedar sustraídos del comercio de los hombres. Esta determinación tiene el efecto de reducir el tamaño del solar considerado para el proyecto de epígrafe, por lo que indubitadamente varían los parámetros de evaluación conforme a la reglamentación vigente.

Como parte de su conclusión, la consulta de referencia establece que parte de los terrenos donde se lleva a cabo la construcción son terrenos ganados al mar. No obstante, se entiende necesario que se lleve a cabo un deslinde por parte del Departamento de Recursos Naturales y Ambientales para poder determinar cuánto terreno está comprendido bajo dicha condición.

Conforme [al] Artículo de la ley [allí citado], toda persona natural o jurídica que en Puerto Rico vaya a realizar una obra de construcción o de uso requiere como paso previo un permiso de esta Agencia. Esta es una de las funciones operacionales de la ARPE. Por otra parte, la Agencia también cuenta con una función fiscalizadora que no culmina con la concesión del permiso; su jurisdicción se extiende aún después de concedido el mismo. Bajo la doctrina jurisprudencial vigente, se establece que en ausencia de limitaciones constitucionales, la autoridad máxima que puede llevar a cabo la expedición de permisos, tiene además, el poder inherente de revocar los mismos. Asociación de Residentes de Baldrich v. Junta de Planificación, 118 D. P.R. 759 (1987).

[...]

[L]a ARPE puede instar cualquiera de los recursos adecuados en ley para impedir o prohibir que se violente cualquier reglamento que regule el uso y construcción de edificios y pertenecientes en Puerto Rico, Artículo 26 de la Ley 76 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. 71 (y). Asimismo, el Artículo 25 de la propia ley concede facultad a la Agencia para ordenar el cese y desista de cualquier obra en construcción y uso, ya sea por la ausencia de permiso o por la obtención de éste por error o fraude, poder que también se recoge en el Reglamento de Certificación de Obras y Permisos. 23 L.P.R.A. 71 (x).

[...]

En el presente caso, es claro que la interpretación del Departamento de Justicia con relación a la existencia de terrenos ganados al mar y la posibilidad de que se estén llevando a cabo construcciones en terrenos de dominio público, establece una interpretación de derecho la cual fue adoptada por la Rama Ejecutiva como política pública. Esta interpretación de derecho crea una duda sustancial sobre la titularidad del predio, que esta Administración de Reglamentos y Permisos debe tomar en consideración en su función fiscalizadora, por lo que es necesario que esta Agencia en vindicación y protección del interés público actúe sobre las autorizaciones emitidas, de manera que se evite cualquier daño o incremento de éste a los recursos que estamos llamados a proteger, al concesionario o ala ciudadanía en general. (Énfasis nuestro)

[...]

En ese aspecto, la facultad de la ARPE se limita a la concesión o denegación de permisos y no le 
*910
compete considerar cuestiones de titularidad. Es a los tribunales de justicia en última instancia a los cuales les corresponde dilucidar una controversia sobre título. De igual forma, la ARPE está impedida de otorgar un permiso de construcción a una persona, cuando a ésta no le consta que efectivamente que aquélla es la dueña. Si un aspecto tan medular como la titularidad del predio no se tomara en consideración para la otorgación de los permisos, no tuviese sentido establecer requisitos para la expedición de éstos. El interés público que reviste el buen uso de los limitados terrenos de nuestra Isla exige el uso del criterio más diligente en esta situación.

La ARPE debe tener certeza de quién es el titular del terreno que se pretende utilizar. Procede que la ARPE actué sobre un permiso, conforme a los poderes que le concede la ley, mientras se está dilucidando un asunto de titularidad en los tribunales.

La Consulta Num. 07-130-B concluye que parte de los terrenos del proyecto del epígrafe son terrenos ganados al mar y que no son susceptibles de enajenación por ser unos de dominio público. Esta interpretación varía las consideraciones que tuvo esta Agencia para la concesión de los diferentes permisos otorgados. No obstante, y por existir una acción sobre dicha controversia ante el Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, esta Administración de Reglamentos y Permisos no entiende necesario en este momento determinar la procedencia de la revocación de las autorizaciones emitidas. Si éste fuera el caso en el futuro, ante una determinación adversa al concesionario por parte del foro judicial, se iniciarán los procesos correspondientes para tomar la determinación que proceda conforme a los elementos que estén presentes en dicho momento. ” (Énfasis nuestro)

Ante lo anterior, no procede el planteamiento esgrimido por el concesionario con relación a la falta de jurisdicción.

Asimismo, el concesionario arguye que se ha violentado su derecho a un debido proceso de ley por haberse notificado la celebración de la vista en un término menor al establecido en la LPAU. No obstante, reconoce que dicho estatuto permite que el término dispuesto de quince días se acorte ante circunstancias especiales.

[...]

La parte proponente tuvo la oportunidad de comparecer a una vista en la que pudo exponer su posición sobre el remedio intimado por la Agencia. No obstante, se limitó a reclamar la alegada carencia de jurisdicción de la ARPE para atender el asunto de titularidad sin someterse a la jurisdicción de ésta. Además, alegó que debía archivarse la acción por alegadamente haberse cometido varias violaciones al debido proceso de ley. Durante la vista, la parte proponente no aportó prueba o argumento alguno que demostrara que la paralización de las obras de construcción no era correcta en derecho. Así tampoco, estableció ninguna razón de hecho, ni de derecho de porqué la Agencia no debía darle consecución a la política pública establecida por la Rama Ejecutiva al hacer suyos los hallazgos de la Consulta 07-130-B.

La ARPE cumplió con los requerimientos procesales del debido proceso de ley, según se recogen estatutariamente en la sección 3.1 de la L.P.A.U., 3 L.P.R.A. see. 2151, salvaguardándole al concesionario los siguientes derechos: (a) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; (b) derecho a presentar evidencia; (c) derecho a una adjudicación imparcial; (d) derecho a que la decisión sea basada en el expediente. Ramírez Ferrer v. Policía de Puerto Rico, supra.

Como parte de la notificación de la Orden de Mostrar Causa y citación a la vista administrativa, la ARPE estableció cuál era el criterio rector para acortar el término de la notificación. Conforme a la doctrina jurisprudencial vigente, el término de quince días establecido en la LPAU es uno de cumplimiento estricto, más (sic) acortar dicho período conforme a circunstancias especiales es permitido siempre que se consigne la razón 
*911
para ello. En el proceso evaluativo, la Agencia determinó que continuar construcciones sobre terrenos que se ha determinado que son de dominio público, no sujetos a enajenación y donde, además, se toma conocimiento oficial de que ha habido manifestaciones y agresiones por diferentes grupos de la sociedad, cuenta con la suficiente urgencia como para acortar el período. Ello de por sí, amerita una actuación inmediata por parte de la ARPE, la cual llevó a cabo conforme le autoriza la ley.

[...]

Ante las determinaciones de hechos y conclusiones de derecho efectuadas en la presente resolución, luego de haber concedido a la parte concesionaria el derecho a una vista para rebatir tanto los aspectos fácticos como de derecho de la Orden de Mostrar Causa, habiéndose negado ésta a así hacerlo, esta Administración de Reglamentos y Permisos, en protección del bienestar general y del concesionario y en atención al interés público involucrado en la presente controversia, donde se están llevando a cabo construcciones en terrenos de dominio público, por la presente y conforme a las facultades conferidas en las leyes y reglamentos se suspenden los efectos de los permisos de construcción concedidos por un término de sesenta días a partir de la notificación de la presente orden y se ordena paralizar cualquier obra de construcción que se esté llevando a cabo en los predios de los casos aquí en controversia que no cuente con un permiso de uso autorizado por esta Agencia.

Esta orden podrá ser prorrogada del interés público así ameritarlo. (Énfasis nuestro)

[...]".

Inconforme con esta Resolución y Orden, la recurrente presentó el 3 de enero de 2008 el recurso de revisión de autos en el que señala que:

“Erró la Administración de Reglamentos y Permisos al dejar sin efecto todos los permisos de construcción concedidos a SGCP sin proveerle el más mínimo debido proceso de ley, mediante notificación insuficiente e inadecuada en tiempo, utilizando prueba extrínseca al expediente administrativo, por consiguiente alterando de manera inconstitucional el peso de la prueba.

Erró la Administración de Reglamentos y Permisos al dejar sin efecto todos los permisos de construcción concedidos a SGCP sin contar con autoridad en ley para ello.

Erró la Administración de Reglamentos y Permisos al dejar sin efecto todos los permisos de construcción concedidos a SGCP, al descartar el mandato expreso del Artículo 104 de la Ley Hipotecaria, 30 L.P.R.A. 2354, que le obliga a presumir a todos los efectos legales que los derechos regístrales existen y pertenecen al titular registral. ”

Conjuntamente con el recurso, SG presentó una Moción en Solicitud de Orden Provisional en Auxilio de Jurisdicción, la que fue atendida por un Panel Especial el 3 de enero de 2008. Atendido el recurso y la referida moción, dicho Panel concedió seis (6) días laborables a la parte recurrida para que se expresara tanto sobre los méritos del recurso como de la moción en auxilio de jurisdicción.
Oportunamente, el 16 de enero de 2008 compareció el Estado Libre Asociado en representación de ARPE en Escrito en Cumplimiento de Orden.
Asimismo, el 15 de enero de 2008 compareció ante nos la Sra. Carmen J. Mascaró, interventora-opositora, en escrito titulado Moción de Desestimación de Recurso de Revisión y de Moción en Auxilio de Jurisdicción, el que, en esencia, constituye un alegato en oposición a los méritos del recurso. Este fue objeto de oposición por *912 parte de SG en escrito presentado el 23 de enero de 2008.
Con el beneficio de las aludidas comparecencias escritas y el cuidadoso estudio de las mismas, procedemos a resolver.
II
Como cuestión de umbral, debemos determinar si tenemos jurisdicción para revisar la Resolución y Orden recurrida. Ep otras palabras, debemos determinar si dicho dictamen es una decisión tal de la agencia que puede ser objeto de revisión por este foro apelativo, ya que el mismo constituye un remedio provisional o de efecto temporal.
La sección 1 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada (LPAU), 3 L.P.R.A. see. 2172, dispone que solamente órdenes o resoluciones finales dictadas por las agencias o funcionarios administrativos pueden ser revisadas judicialmente. Requiere, además, que la parte haya agotado todos los remedios provistos por la agencia o por el organismo administrativo correspondiente y que la base para la revisión judicial ulterior sea la orden o resolución final de la agencia. Junta Examinadora de Tecnólogos Médicos v. Elias, 144 D.P.R. 483, 489 (1997). La ley no contempla, pues, la revisión judicial de las órdenes o dictámenes interlocutorios que emita una agencia durante un procedimiento adjudicativo ante ella.
Aunque tanto la doctrina de agotamiento de remedios administrativos como el requisito de finalidad de la decisión administrativa son normas distintas, ambas tienen un alcance análogo y cuentan con similares excepciones en su aplicación. Procuradora Paciente v. MCS, 163 D.P.R. _ (2004), 2004 JTS 160; Junta Examinadora v. Elias, supra.
La See. 4.3 de la LPAU, 3 LPRA See. 2173, dispone las instancias en las que no se requiere agotar el trámite administrativo. Éstas son:

“...cuando el remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. ”

Cónsono con lo anterior, la jurisprudencia ha establecido otros factores afines para ello, a saber: (a) que dar curso a la acción administrativa causaría un daño inminente, material y sustancial; (b) que el remedio administrativo constituiría una gestión inútil y que no ofrece un remedio adecuado; (c) que la agencia claramente no tiene jurisdicción sobre el asunto; o (d) que el asunto es estrictamente de derecho. Procuradora Paciente v. MCS, supra. Véase Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716 (1982). También los ha caracterizado de la siguiente manera:
“(a) existe un reclamo sustancial de que la actuación administrativa lesiona derechos constitucionales de una parte; (b) se puede trazar una línea y distinguir entre situaciones de interpretación estatutaria y constitucional en que la competencia y destreza del foro judicial es evidente, y aquéllos en que se manifiesta la especialidad o pericia (expertise) acumulativa[,] y (c) se puede tomar en ilusorio y académico el derecho reclamado.” P.N.P. v. Hernández, Srio. D.T.O.P., 122 D.P.R. 362, 366 (1988); P.S.P. v. Srio de Hacienda, 110 D.P.R. 313, 317 (1980). (Itálicas en el original y énfasis nuestro)
Aplicada la normativa expuesta al caso ante nos, resolvemos que tenemos facultad para atender el recurso, *913 debido a que la recurrente reclama fundamentadamente que su derecho constitucional al debido proceso de ley fue lesionado por la agencia, lo que constituye una excepción al agotamiento de remedios administrativos. Además, se desprende del expediente con meridiana claridad el reclamo de SG a la protección de su interés propietario sobre el Proyecto Paseo Caribe ante las actuaciones de la ARPE. Tales intereses de naturaleza constitucional han sido planteados por la recurrente “con hechos específicos y bien definidos” como requiere la jurisprudencia. En razón de ello, procede que revisemos la actuación de la ARPE respecto a estos reclamos, aunque el dictamen recurrido contenga una determinación de naturaleza provisional. De esperar que se culmine el trámite administrativo, se le podría ocasionar daño de naturaleza irreparable a la recurrente.
III
SG señala en su recurso que ARPE cometió tres errores, a saber: (1) al dejar sin efecto los permisos sin proveerle el mínimo debido proceso de ley; (2) al dejar sin efecto los permisos y paralizar la obra sin tener autoridad en ley para ello, y (3) al descartar la presunción del Artículo 104 de la Ley Hipotecaria en tomo a que los derechos regístrales existen y pertenecen al titular registral.
Por ser de naturaleza medular, atenderemos en primer término el segundo error apuntado, y luego, los restantes dos.
A
La autoridad del Estado para corregir sus propios errores
Debemos poner en justa perspectiva de qué trata este litigio. Este recurso no se refiere a una querella contra SG. No surge del expediente ante nuestra consideración que a la recurrente se le haya imputado violación alguna de leyes, reglamentos o de los permisos que le fueran extendidos. En síntesis, lo que se desprende es que el Gobierno del Estado Libre Asociado de Puerto Rico ha concluido que puede haber cometido un error jurídico al permitir la construcción de edificios en terrenos ganados al mar. De la Opinión preparada por el Secretario de Justicia se desprende que la Junta y la ARPE, así como el Departamento de Recursos Naturales y Ambientales, erraron al aprobar la construcción de porciones del proyecto mixto residencial, comercial y turístico de Paseo Caribe en un espacio en el que podría ser ilegal construir. El Gobierno ha manifestado mediante orden ejecutiva su intención de corregir ese error.
El Tribunal Supremo de Puerto Rico se ha enfrentado en numerosas ocasiones a la interrogante de si al Estado le aplica la doctrina de los actos propios, cuando sus agencias deciden revisar errores administrativos y estas decisiones afectan a una parte. En Infante v. Tribunal Examinador, 84 D.P.R. 308, 316 (1961), el Tribunal Supremo consolidó su reiterada doctrina al indicar: “Este principio de derecho [que nadie puede ir en contra de sus propios actos] puede aplicarse siempre en las relaciones civiles de unos ciudadanos para con otros; pero nunca en las relaciones del ciudadano para con el Estado, cuando hay de por medio una cuestión de interés público que se interpone como barrera, en defensa de los derechos de la colectividad. ”
Este principio fue aplicado en Del Rey v. Junta, 107 D.P.R. 348, 355 (1978), referente a un error cometido por ARPE en la concesión de ciertos permisos. En dicho caso, el Tribunal Supremo expresó que: “En el supuesto que la agencia administrativa hubiese cometido algún error en la aplicación de la ley, esa actuación no sería válida.” Pautó además: “No se puede pretender, pues, que una actuación administrativa de dudosa corrección impida a la agencia pertinente que se corrija optando por evitar su repetición. ” Aunque allí se trató de actos fraudulentos imputados al concesionario de un permiso, el Tribunal enfrentó la alegación de que iguales permisos habían sido extendidos para la construcción de edificios mediando el mismo fraude. El Tribunal Supremo estableció que: “la igual protección de las leyes no implica la igual protección de la violación de las leyes. ”
Después de una jurisprudencia constante sobre esta materia, en su expresión más reciente —Ouilés *914 Hernández v. Del Valle, res. el 30 de marzo de 2006, 2006 JTS 54, 167 D.P.R. _ (2006) — , el Tribunal Supremo esbozó la doctrina de la siguiente manera:
“Sabido es que los errores administrativos no crean derechos y pueden ser corregidos en cualquier momento por el Estado.” Santiago v. Departamento de la Familia, 153 D.P.R. 208, 218 (2001). Conforme a ello, hemos resuelto que una parte no puede pretender ampararse en una actuación administrativa incorrecta. González Fuentes v. E.L.A., res. el 29 de marzo de 2006, 2006 JTS 53; Magriz v. Empresas Nativas, 143 D.P.R. 63, 71 (1997); Del Rey v. J.A.C.L., 107 D.P.R. 348, 355-356 (1989).
Por otro lado, es norma reiterada que las doctrinas de actos propios y estoppel, de ordinario, no son aplicables contra el Estado, cuando hay de por medio una cuestión de interés público envuelta. Mendoza Aldarondo v. Asociación de Empleados del Gobierno de Puerto Rico, 94 D.P.R. 564; Infante v. Tribl. Examinador de Médicos, 84 D.P.R. 308, 316-317 (1961); Vives v. La Junta de Farmacia, 24 D.P.R. 669 (1916). Véase además, Equitable Estoppel of the Government, 79 Colum. L. Rev. 551 (1979). (Énfasis nuestro)
La doctrina expuesta sostiene que si efectivamente el Gobierno hubiese errado al permitir la construcción de porciones del Proyecto Paseo Caribe en un espacio en que es ilegal construir, éste no está impedido de corregir su error, aunque ello pueda afectar los intereses del concesionario, no importa cuán cuantiosos o de cuánta envargadura sean. Otro asunto es quién sufraga los costos del error, si éste fue causado por el Estado y no por el concesionario. En E.L.A. v. Rivera, 88 D.P.R. 196, 199 (1963) el Tribunal Supremo resolvió:

“Convenimos con la Sala Sentenciadora en que esta edificación se hizo en violación de un Reglamento, aun cuando fuera autorizada por un funcionario del la propia Junta. Siendo en violación de Ley, procede su corrección. Pero vistas las conclusiones de hechos de la propia Sala sentenciadora (...) y tratándose de un procedimiento fundamentalmente equitativo el que invoca la demandante, la sentencia debe ser modificada en el sentido de que el costo de la reducción en exceso de la altura de 1 metro y hasta 6 pies, no debe ser con cargo a la demandada. ”

En Plaza las Américas v. N & H S.E. y Sedeco, res. el 28 de diciembre de 2005, 2006 JTS 8, 165 D.P.R. _ (2005), el Tribunal Supremo utiliza la aludida expresión para reconocer un derecho propietario a quien se afecte por los errores del Estado que éste deba corregir. Allí enunció que: “La diligencia y buena fe de quien ejecuta un uso u obra contrario a derecho es un factor relevante a la hora de precisar el debido proceso de ley y confeccionar el remedio apropiado, sin alterar su ilicitud. ” En la nota al calce núm. 15, el Tribunal explica: “En Fuertes Guillermety v. A.R.P.E., 130 D.P.R. 971 (1992) indicamos tácitamente que un permiso adquirido de buena fe podría constituir un interés propietario. ”
La posible revocación o modificación de los permisos concedidos por la ARPE cuando las obras están en su etapa final, implica pérdidas que sólo el causante de éstas debe compensar. En el proceso de corregir los errores se deben tomar en consideración los derechos propietarios ya adquiridos por el concesionario de los permisos y el impacto en el erario, si el error es sólo imputable al Estado. 
El conflicto entre el desarrollo de proyectos de construcción y las restricciones impuestas por el Estado en áreas costaneras ha surgido en varios casos que se han ventilado en el Tribunal Supremo de Estados Unidos. Usualmente, este tipo de conflicto se ha analizado bajo el crisol de si la norma impuesta por el gobierno y que prohíbe el desarrollo de un terreno en particular constituye una expropiación que deba ser compensada a tenor de la Quinta Enmienda de la Constitución federal. Véase Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992); Palazzolo v. Rhode Island, 533 U.S. 206 (2001).
En Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, 334 (2002), una asociación de terratenientes en Lake Tahoe impugnó la decisión del Tahoe Regional Planning Agency de *915 prohibir por 32 meses toda construcción en las cercanías del lago. La agencia había paralizado las obras mientras formulaba un plan y la política pública para el desarrollo del área. Los concesionarios de los permisos alegaron que la prohibición constituía una expropiación sin justa compensación. En su opinión, el Tribunal Supremo discutió a profundidad toda su jurisprudencia relacionada con la expropiación, y decidió lo siguiente:

“[T]he extreme categorical rule that any deprivation of all economic use, no matter how brief, constitutes a compensable taking surely cannot be sustained. Petitioners' broad submission would apply to numerous “normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like, ” 482 U.S., at 321, 107 S.Ct. 2378, as well as to orders temporarily prohibiting access to crime scenes, businesses that violate health codes, fire-damaged buildings, or other areas that we cannot now foresee. Such a rule would undoubtedly require changes in numerous practices that have long been considered permissible exercises of the police power. As Justice Holmes warned in Mahon, “[gjovernment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. ” 260 U. S., at 413, 43 S.Ct. 158. A rule that required compensation for every delay in the use of property would render routine government processes prohibitively expensive or encourage hasty decisionmaking. Such an important change in the law should be the product of legislative rulemaking rather than adjudication. More importantly, for reasons set out at some length by Justice O'CONNOR in her concurring opinion in Palazzolo v. Rhode Island, 533 U.S., at 636, 121 S.Ct. 2448, we are persuaded that the better approach to claims that a regulation has effected a temporary taking “requires careful examination and weighing of all the relevant circumstances. ”

En resumen, “cuando hay de por medio una cuestión de interés público que se interpone como barrera, en defensa de los derechos de la colectividad”, Infante v. Tribunal Examinador, supra — , el Estado puede corregir sus errores. Sin embargo, “un permiso adquirido de buena fe podría constituir un interés propietario. ” Como al concesionario de los permisos del Proyecto Paseo Caribe no se le ha imputado violación o conocimiento de violaciones, es forzoso asumir —mientras no se le impute otra cosa — , que existe esa buena fe y ese interés propietario. De ese interés, no se le puede privar sin el debido proceso de ley, asunto que examinaremos más adelante.
B
La jurisdicción de la ARPE
En este caso, la recurrente impugna la jurisdicción de la ARPE al actuar sobre permisos ya concedidos, que son finales y firmes, en torno a los cuales, según argumenta, la ARPE no tiene ya jurisdicción.
Para auscultar la jurisdicción de una agencia, debemos remitimos a la doctrina sobre delegación de poderes y a las pautas jurisprudenciales sobre la materia. La delegación de poderes “bajo criterios amplios no se cuestiona hoy día. ” Viajes Gallardo v. Clavell, 131 D.P.R. 275, 285 (1992). En Rodríguez v. Bco. Gub. de Fom. P.R., 151 D.P.R. 383, 400 (2000), citando a Viajes Gallardo, el más Alto Foro judicial expresó:

“En la actualidad se sostiene la validez de la delegación, siempre y cuando que en la ley que crea la agencia se establezcan normas adecuadas, pautas, estándares, criterios, o principios inteligibles o aquellas garantías o salvaguardas procesales y sustantivas que sirvan de guía a la delegación y que delimiten sus facultades, para evitar que las actuaciones de la agencia resulten arbitrarias o caprichosas. Dichos criterios no tienen que ser expresos, pueden surgir, inclusive, del historial legislativo y pueden ser amplios y generales. Si tiene un fin o interés público, por lo general es suficiente justificación para que se sostenga la delegación. ”

Por otro lado, en Perfect Cleaning v. Cardiovascular, 162 D.P.R 745, 759 (2004), el Tribunal Supremo apuntó:

“Al precisar si la agencia ha excedido su autoridad en el ámbito reglamentario, le corresponde al tribunal 
*916
evaluar: (1) si se delegó poder de reglamentación; (2) si la actuación administrativa está autorizada por ley; (3) si la reglamentación promulgada está dentro de los amplios poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley habilitadora de la agencia y la LPATJ; y (5) si la reglamentación es arbitraria o caprichosa. (...) La agencia habrá actuado de manera ultra vires de concluirse que la regla o reglamento examinado no se aprobó con arreglo a todos estos requisitos. (...) Por lo tanto, dicha actuación se considerará nula. ”

1. Los poderes amplios delgados a ARPE

“Procede establecer primero las bases estatutarias para la intervención de la ARPE con el Proyecto Paseo Caribe. La ARPE fue creada por virtud de la Ley Núm. 76 de 24 de junio de 1975, conocida como la Ley Orgánica de la Administración de Reglamentos y Permisos, 23 L.P.R.A. sec. 71 et. seq. Los poderes que le ha concedido la Asamblea Legislativa a la ARPE están enumerados en el Artículo 5 de la Ley Num. 76, 23 L.P.R. A. see. 7Id. Entre ellos se encuentran los siguientes:

[...]

(p) Aplicar y velar el cumplimiento de sus propios reglamentos, de los Reglamentos de Planificación que haya adoptado o adopte la Junta de Planificación de Puerto Rico para el desarrollo, subdivisión y uso de terrenos y para la construcción y uso de edificios, así como el cumplimiento de toda ley estatal, ordenanza, o reglamentación de cualquier organismo gubernamental que regula la construcción en Puerto Rico.

(q) Ejercer las funciones, deberes y responsabilidades que delegue en la Administración la Junta de Planificación, conforme a la autorización y condiciones consignadas mediante resolución de la Junta, reglamento o en las sees. 62 a 63j de este título.

(r) Establecer estrecho enlace y coordinación con la Junta de Planificación, el Departamento de Recursos Naturales y Ambientales, la Junta de Calidad Ambiental, y los demás organismos gubernamentales para lograr que la política pública ambiental, y asimismo la política pública sobre el desarrollo económico, social, y físico de Puerto Rico, que consignan dichas sees. 62 a 63j de este título, se estructuren mediante el esfuerzo integral de todos los organismos gubernamentales, para proveer el máximo beneficio a la comunidad puertorriqueña.

[...]

(v) Llevar a cabo toda clase de estudios sobre asuntos que afecten a la Administración de conformidad con lo dispuesto en este Capítulo. ” (Enfasis nuestro)
Esta agencia ha sido descrita por el Tribunal Supremo como “el brazo operacionaí’ de la Junta de Planificación. En A.R.P.E. v. Rivera, 159 D.P.R. 429, 437 (2003), dicho foro expresó:

“Desde el siglo pasado, ha sido política pública del Gobierno del Estado Libre Asociado de Puerto Rico dirigir el proceso de planificación de nuestra isla hacia un desarrollo integral sostenible asegurando el juicioso uso de las tierras y fomentando la conservación de los recursos naturales para el disfrute y beneficio de todos. ”

Atendiendo estos principios, el 24 de junio de 1975, se promulgó la Ley Núm. 75, conocida también como la “Ley Orgánica de la Junta de Planificación de Puerto Rico” (en adelante, “Ley Núm. 75”), 23 L.P.R.A. §§ 62 et seq., la cual designó a la Junta de Planificación como el organismo estatal encargado de guiar el desarrollo integral de Puerto Rico de modo coordinado, adecuado y económico. Ello, con el propósito de fomentar la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y lograr *917 la mayor eficiencia en el uso de las tierras y de otros recursos naturales. 23 L.P.R.A. §62(c).
Asimismo, surge de la Exposición de Motivos de dicha ley, que se reconoció la necesidad de crear un organismo gubernamental que tuviese a su cargo las facultades, en las fases operacionales, que hasta ese entonces correspondían a la Junta de Planificación.
Así, mediante la Ley Núm. 76 de 24 de junio de 1975, supra, se creó a ARPE, cuerpo que inmediatamente pasó a ser el brazo operacional de la Junta de Planificación, al estar encargada de aplicar y velar por el cumplimiento de las leyes y reglamentos de planificación, y de los propios reglamentos que a tales fines se adopten. 23 L.P.R.A. sec. 71 (d); véase además A.R.P.E. v. Ozores, 116 D.P.R. 816 (1986). Con la aprobación de ambas leyes, se delegaron en ARPE varias facultades, algunas de las cuales veremos a continuación. Según lo dispuesto en la Ley Núm. 75, supra, se delegó competencia a ARPE en aquellos casos o determinaciones en que medien cualesquiera de las siguientes cuatro condiciones:

“(1) Casos en que se requiera acción en la “fase operacional”.

(2) Casos en que la estructuración o decisión a adoptarse no requiera implantar una política general o una definición de política pública, por haber sido establecidas o adoptadas por la Junta.

(3) Casos en que la Junta determine, a la luz de la función de dicha Administración, que pueden resolverse los casos o adoptarse las determinaciones con más celeridad o eficiencia por la Administración; y

(4) Casos en que la delegación de éstos no cause entorpecimiento indebido a dicha agencia para cumplir con las funciones que la ley impone.” Véase 23 L.P.R.A. §62(j) (19)(a). (Énfasis nuestro)
En el caso ante nuestra consideración, debemos destacar que ARPE actuó tras recibir una orden de la Junta de Planificación en su Resolución de 14 de diciembre de 2007, para que tomara “las medidas cautelares que considere necesarias para implementar las recomendaciones del Secretario de Justicia”. Con ello, la Junta presupuso que en este caso, “a la luz de la función de dicha Administración” pueden “adoptarse las determinaciones con más celeridad o eficiencia por la Administración [ARPE]”. Esta instrucción a la ARPE encuentra apoyo en el Art. 5 (q) de su ley habilitadora que arriba citamos; es una “autorización [...] mediante resolución de la Junta”. Según la ley, tal autorización o subdelegación puede abarcar prácticamente la totalidad de la autoridad que la ley le confiere a la Junta “en las sees. 62 a 63j de este título” según lo transcribe la compilación de L.P.R.A. En esas secciones está contenida la ley habilitadora de la Junta (menos unas disposiciones en torno al tráfico de vehículos de motor) y el Art. 11 (14) de dicha ley, 23 L.P.R.A., sec. 62j (14), que invocó el Secretario de Justicia en su recomendación. Ésta la faculta a “hacer determinaciones sobre usos de terrenos dentro de los límites territoriales del Estado Libre Asociado, con sujeción a las normas y requisitos consignados en este Capítulo o en cualquiera otra ley aplicable, para tales casos”.
2. Los poderes específicos aplicables a este caso
El Artículo 11 de la ley habilitadora de la Junta, 23 L.P.R.A. sec. 62j, en su inciso (19) (a)(i), faculta a dicho organismo a delegar autoridad a ARPE para ejercer los deberes y reglamentos que por ley se reservan a la Junta en casos que se encuentran en su “fase operacional.” La “fase operacional” se define en el Art. 3 de la Ley Núm. 75, 23 L.P.R.A. sec. 62b, como:

“Aquella parte de la función de revisión de proyectos que comprende, entre otros, el aplicar y velar por el cumplimiento de las leyes y reglamentos promulgados para el uso, desarrollo, y subdivisión de terrenos, así como para la construcción de edificios y estructuras ’ ’.

*918 En el ejercicio de esta discreción que le ha concedido la Asamblea Legislativa a la Junta, en varios de sus reglamentos ésta le ha delegado autoridad a ARPE para intervenir en la “fase operational” de los proyectos. Entre los reglamentos de la Junta que autorizan la jurisdicción de ARPE se encuentra el Reglamento de Planificación Núm. 17, conocido como el Reglamento de Zonificación de la Zona Costanera y de Accesos a las Playas y Costas de Puerto Rico, Reglamento Núm. 3424 de la Junta de Planificación de 31 de marzo de 1983.
En su Introducción, dicho Reglamento establece que: “una fuente expresa de poder para reglamentar el uso y acceso a la costa y a las playas y la protección de la zona costanera de Puerto Rico es la propia Constitución de Puerto Rico, la cual declara como política pública ‘la más eficaz conservación de sus recursos, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad, ’ Constitución del Estado Libre Asociado de Puerto Rico, 1952, Artículo VI, Sección 9.” La Sección 1 del Reglamento Núm. 3424 establece su alcance. En particular, la sección 1.03 indica lo siguiente:

“Aplicación- Las disposiciones contenidas en este Reglamento le aplicarán y cubrirán a:

1) Toda construcción, reconstrucción, demolición, o alteración de edificios, subdivisión, notificación, desarrollo, urbanización de terrenos y cualquier otro proyecto que se proponga dentro de la Zona Costanera de Puerto Rico y de las islas adyacentes dentro de su jurisdicción.

2) Toda transacción de terrenos públicos dentro de la Zona Costanera de Puerto Rico, a ser realizada por algún funcionario u organismo del Gobierno de Puerto Rico.

3) Todos aquellos terrenos dentro de la Zona Costanera y, además, incluyendo los terrenos sumergidos y aquellos terrenos sumergidos bajo aguas navegables colindantes con la isla de Puerto Rico y las otras islas adyacentes dentro de su jurisdicción, cuando se determine que es necesario para la implementation de este Reglamento. ” (Énfasis nuestro)
La sección 2 del Reglamento define los términos claves que éste utiliza. Citamos los aquí pertinentes.

“2.17- Costa- La línea de la orilla o borde de un país que da al mar o al océano, la cual está constituida por la línea de bajamar, que es la marea baja promedio.

2.19- Edificio- Se refiere a estructuras de cualquier clase que se erigen, construyen, fijan, o sitúan por la mano del hombre en el o sobre el terreno, o agua, con el propósito de ser ocupadas o habitadas temporal o permanentemente por personas, animales o cosas.

2.23- Legua marina- Medida itineraria equivalente a 5,555.55 metros lineales o a 3 millas marinas de 1,851.83 metros lineales.

2.28- Obra- Edificios y estructuras, incluyendo las mejoras y trabajos que se realicen en el terreno para facilitar o complementar la construcción de éstos, así como las mejoras e instalaciones necesarias para el uso, segregación, subdivisión, o desarrollo de terrenos.

2.36- Resolución- Informe o documento contentivo de un acuerdo o decisión adoptado por la Junta de Planificación o por la Administración de Reglamentos y Permisos (ARPE).

2.39- Terrenos sumergidos- Terrenos o suelo permanente o periódicamente cubiertos por agua hasta, pero no sobre, la línea media de la marea alta, en playas, bahías, lagunas, pantanos y otros cuerpos de agua.

2Al- Zona Costanera- Franja de terreno costanero y las aguas adyacentes dentro de su jurisdicción, *919 delimitada por el Departamento de Recursos Naturales y aprobada por la Junta de Planificación y por el Gobernador de Puerto Rico, que se extiende (1,000) metros lineales tierra adentro desde la línea de costa y, además, distancias adicionales, hasta donde sea necesario para asegurar que se incluyan los sistemas naturales claves de la costa, así como las aguas y el suelo oceánico o marítimo que se extiende tres (3) leguas marinas (10.35 millas terrestres) aguas adentro.
2.48- Zona Marítimo-Terrestre- Significa el espacio de las costas de Puerto Rico que baña el mar en su flujo y reflujo, en donde son sensibles las mareas, y las mayores olas en los temporales, en donde las mareas no son sensibles, e incluye los terrenos ganados al mar y los márgenes de los ríos hasta el sitio en que sean navegables o se hagan sensibles las mareas; y el término, sin condicionar, significa la zona marítima terrestre de Puerto Rico. ” (Énfasis nuestro)
De otro lado, la sección 24 del aludido Reglamento establece los procedimientos que se deben seguir para cualquier proyecto que esté cubierto por sus disposiciones. De acuerdo con la sección 24.01:
“Disposición General- A partir de la vigencia de este Reglamento y de los Mapas de Zonificación de la Zona Costanera, todo proyecto para la notificación, urbanización y desarrollo de terrenos, así como para la construcción, reconstrucción, alteración, ampliación, traslado, demolición y uso de edificios y para la instalación de rótulos en la Zona Costanera, necesitará el permiso o autorización correspondiente previo a comenzar cualquier actividad, y para ello deberá ser sometido a la consideración de la Junta de Planificación en la etapa de la consulta de ubicación, cuando así corresponda, y ala Administración de Reglamentos y Permisos, en las etapas subsiguientes.” (Énfasis nuestro)
Por su parte, la sección 24.02 del Reglamento Núm. 3424 explica la importancia de conocer la zona marítimo-terrestre antes de comenzar la construcción de cualquier obra o proyecto bajo la supervisión de la Junta o ARPE. Requiere lo siguiente:
“En todo proyecto en que se haya aprobado la consulta de ubicación y se presente en una etapa posterior, y el cual esté ubicado adyacente o cercano a un sector de la costa, playa o litoral lacustre, será necesario que se someta, junto con otros documentos y requisitos, un plano de mensura, con un mínimo de cinco (5) copias, debidamente certificado por el Secretario del Departamento de Recursos Naturales, en el cual aparezca deslindado el límite marítimo-terrestre. Esta certificación delimitando la zona marítimo-terrestre tendrá un (1) año de vigencia y no se entenderá que conceda derechos de propiedad permanentes y sí que representa el límite de ésta en la fecha del plano, el cual podría variar cuando la naturaleza altere el contorno de la costa o playa. ” (Énfasis nuestro)
De estas disposiciones se desprende que la Junta y la ARPE, al igual que otras agencias como el Departamento de Recursos Naturales y Ambientales, están llamadas a supervisar a que, en todo momento, se mantenga la separación entre una construcción y la zona marítimo-terrestre.
En el caso de autos, el asunto sometido al proceso que ha iniciado la Junta —y cuya fase operacional, en cuanto a la toma de medidas cautelares ha encomendado a la ARPE — , es que, según la Opinión del Secretario de Justicia de 11 de diciembre de 2007, págs. 29-42, nuestro ordenamiento jurídico: (1) prohíbe la construcción sobre la zona marítimo-terrestre mientras ésta mantenga su carácter como bien de dominio público, el cual le fue otorgado por la legislación española del siglo XIX y reafirmado por la legislación federal durante el siglo XX; y (2) que según dicho ordenamiento, los terrenos ganados al mar forman parte de la zona marítimo-terrestre, y por consecuencia, son de dominio público, y la ley prohíbe su uso mientras no sea autorizado por la Asamblea Legislativa. Si esa Opinión es correcta, la autorización concedida al Proyecto Paseo Caribe para construir sobre terrenos ganados al mar podría ser nula. Ello conllevaría la revocación, al menos parcial, de los permisos y su reformulación para adaptarlos a lo que cumple con la ley según sea finalmente interpretada. Mas *920 este asunto no está ante nosotros.
El Reglamento Núm. 3424, supra, requiere que tanto la Junta como ARPE verifiquen la colindancia de un proyecto con la zona marítimo-terrestre antes de otorgar un permiso. Asumimos que en este caso, ARPE lo hizo. No obstante, una vez otorgados los permisos, el Estado ha decidido corregir lo que considera un error jurídico cometido. La cuestión a dilucidar no es, para fines de ARPE, la titularidad —que es un asunto a ser dilucidado por los tribunales — , sino si la construcción del Proyecto Paseo Caribe podía ser autorizada en tales terrenos. Si es correcto que los terrenos ganados al mar son parte de la zona marítimo-terrestre (asunto que no está ante nosotros en este recurso), podría haber una porción de los terrenos del complejo mixto, que quedaría dentro de esa zona y no estaría conforme a nuestro ordenamiento jurídico, por lo que la continuación de las obras allí no podría ser permitida.
3. La jurisdicción de la ARPE después de emitidos los permisos
Uno de los objetivos principales de ARPE es aplicar las leyes y reglamentos de planificación y velar por su cumplimiento. Según el Tribunal Supremo, es clara la intención legislativa de conceder amplia discreción a ARPE "... sobre la formulación y mantenimiento de la política pública a seguir con relación al trámite de la concesión y denegación de permisos de uso y la intención de proveer los remedios legales necesarios para que ARPE pueda velar por el cumplimiento efectivo de sus determinaciones.” ARPE v. Ozores Pérez, 116 D.P.R. 816, 820-821 (1986). Entre esos remedios está, como veremos, el de paralizar provisionalmente un permiso otorgado y, de así entenderlo, eventualmente revocarlo. Para eso la ARPE tiene a su haber una “transferencia defunciones”, extendida por reglamentación de conformidad con la ley. 23 L.P.R.A. sec. 63f.
El Reglamento Núm. 6435 sobre Procedimientos Adjudicativos le concede a ARPE la autoridad para asumir jurisdicción en un proceso cuando tiene base suficiente para creer que se ha otorgado un permiso por equivocación o error. Su sección 19.03 señala cuándo procede que se inicie un proceso de revisión y revocación de un permiso:

“(1) Autorizaciones y Permisos por Certificación - En todo caso de autorización o permiso solicitado mediante el procedimiento de certificación, según provisto por la Ley 135 del 15 de junio de 1967, según enmendada, es responsabilidad del ingeniero, arquitecto o agrimensor proveer la información, incluso el análisis ambiental, que sea veraz, correcta y completa conforme a las leyes y reglamentos vigentes en atención a lo cual la ARPE procederá a conceder la autorización o el permiso de la manera más expedita posible. ”

Cualquier autorización o permiso así obtenida podrá ser revocada, previa la notificación de intención de revocar y citación a vista dirigida a la parte y al profesional que le representa, cuando se establezca que la autorización o permiso obtenido fue sustancialmente producto de fraude o error o si la obra está siendo construida en contravención con lo aprobado. La parte será apercibida de la autoridad de la ARPE para tomar la acción descrita, así como las otras acciones disponibles, en el formulario de solicitud de servicio correspondiente, entre éstas:

“[...]

(b) Si la obra está en proceso de construcción, la ARPE podrá expedir órdenes de hacer, de no hacer, y de cese y desistimiento o paralización; presentar recursos de interdicto, mandamus, nulidad o cualquier otra acción para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio o uso, hechos o mantenidos en infracción del Reglamento de Certificación o imponer las multas administrativas correspondientes.

(2) Otras Autorizaciones y Permisos - La ARPE podrá revocar cualquier otro permiso o autorización por infracción a los términos de la misma o a la reglamentación vigente, o cuando se establezca que la decisión *921 tomada o permiso obtenido fue producto defraude o error.” (Énfasis nuestro)
Véase además, el Reglamento para la Certificación de Obras y Permisos Núm. 6494, 29 de junio de 2002, pág. 90.
Advertimos de lo expuesto, que cuando la concesión del permiso pudo haber estado fundamentado en un error, la ARPE podrá investigar tal situación e iniciar un procedimiento de revocación. En el caso de autos, la ARPE tiene ante sí, al igual que la Junta que le delega la misión de tomar medidas cautelares, un fundamento jurídico de que otorgó permisos para la constmcción de un proyecto que en parte podría estar localizado sobre la zona marítimo-terrestre. Es prudente de la agencia negarse a determinar, en esta etapa, que el error se ha cometido y que procede la revocación de todos los permisos. Nada hemos encontrado en las fuentes estudiadas que le impida a ARPE investigar esta situación en primera instancia y tomar las medidas que entienda razonables para atenderla.
Conforme a la etapa en que se encuentra este caso, debemos analizar si ARPE tiene la facultad delegada por ley y reglamento para dar órdenes de cesar y desistir o de paralización respecto a una actividad que pueda ser contraria a la ley en lo que concluye que lo es.
El Artículo 25 de la Ley Orgánica de ARPE, 23 L.P.R.A. sec. 71x, establece la facultad delegada a ARPE para tomar las medidas cautelares que le encomendó la Junta en este caso. Dicho artículo reza:
“La Administración podrá expedir órdenes de hacer o no hacer y de cese y desistimiento para que se tomen las medidas preventivas o de control necesarias para lograr los propósitos de este Capítulo y de los reglamentos que la Administración deba, por ley, implementor. La persona contra la cual se expidiera tal orden, podrá solicitar vista administrativa para exponer razones para que la Administración considere revocar, modificar o de otro modo sostener dicha orden. ” (Énfasis nuestro)
Entre “los propósitos de este Capítulo [Ley]”, como hemos visto, está, en general, “velar el cumplimiento de [...] de toda ley estatal, ordenanza, o reglamentación de cualquier organismo gubernamental que regula la construcción en Puerto Rico”, y en particular, que la ARPE reciba delegaciones de la Junta con el fin de acelerar algún proceso que sea de su propia jurisdicción. Entre estos últimos, como antes vimos, está el del Art. 11 (14) de su ley habilitadora que la faculta a “hacer determinaciones sobre usos de terrenos dentro de los límites territoriales del Estado Libre Asociado, con sujeción a las normas y requisitos consignados en este Capítulo [Ley] o en cualquiera otra ley aplicable, para tales casos”.
La orden cautelar de paralización es uno de los remedios cuyo poder para emitir le puede ser delegado a las agencias administrativas. Así lo reconoció el Tribunal Supremo en Consejo para la Protección del Patrimonio Arqueológico Terrestre de Puerto Rico v. Gobierno Municipal de Barceloneta, res. el 20 de junio de 2006, 2006 JTS 111, 168 D.P.R. _ (2006), al expresar:
“La delegación de poderes cuasi-judiciales incluye no sólo la potestad de resolver controversias, sino también la de dictar remedios. La orden de paralización u orden de cesar y desistir es uno de los remedios que le pueden ser delegados a las agencias administrativas. El profesor Schwartz nos señala: Administrative agencies may also be given injunctive power, though the name ‘injunction’ is not used. The cease and desist orders that may be issued by most regulatory agencies are the administrative equivalents of prohibitory injunctions. ” B. Schwartz, Administrative Law, Little Brown & Co., Canada, 3era Ed., 1991, pág. 93. Véase también, Davis, Administrative Law Text, West Publishing, New York, 3era Ed., 1972, págs. 211-212.
Al repasar las leyes orgánicas de varias agencias administrativas del Estado Libre Asociado de Puerto Rico, encontramos expresamente tal facultad delegada. Así ocurre, por ejemplo, con la Ley de la *922 Junta de Planificación, 23 L.P.R.A. sec. 62j(a) (Art. 2, inciso 9); la Ley de la Administración de Reglamentos y Permisos, 23 L.P.R.A sec. 71x (Art. 25); la Junta de Calidad Ambiental, 12 L.P.R.A. see. 1131 (22); la Ley de Telecomunicaciones de Puerto Rico, 27 L.P.R.A. sec. 267f(3); y el Departamento de Asuntos del Consumidor, 3 L.P.R.A. sec. 341-l(b) (Art. 4). (Énfasis nuestro)
Aplicada la citada normativa al Artículo 25, supra, se desprende con meridiana claridad que ARPE ha sido expresamente dotada por la Asamblea Legislativa con la facultad para emitir órdenes de paralización de los permisos que ha emitido, por razón de violaciones de ley o del reglamento, por lo que no es necesario que acuda al Tribunal para solicitar un interdicto a esos fines. Tanto es así, que el mismo Artículo 25 en su segundo párrafo dispone: “La resolución, orden o dictamen de la Administración [ARPE] sólo podrá ser revisada por el Tribunal (...), quedando las mismas en todo su efecto y vigor hasta que el Tribunal haga otra determinación.” 23 L.P.R.A. sec. 71x
Acorde con nuestro análisis, nada impide que la referida disposición sea aplicada a una medida cautelar o de control que ordene paralizar edificios en construcción en caso de que se descubra algún motivo dentro de las encomiendas de ley o reglamento que “la Administración [ARPE] deba, por ley, implementar”. Por su parte, el Artículo 26 siguiente, 23 L.P.R.A., sec. 71y, autoriza expresamente a la ARPE “a instar .... el recurso adecuado en ley para impedir .... remover o demoler cualquier edificio construido, usado o mantenido en violación de este Capítulo [Ley] o cualquiera de los reglamentos que regulen la construcción y uso de edificios y pertenencias en Puerto Rico. ” Es decir, el primer artículo permite a la agencia paralizar los permisos que ha emitido si se descubre, de algún modo, que podrían estar en contravención de las leyes que le corresponde a la ARPE implementar, y el segundo, le permite acudir a los tribunales para que ordene, por ejemplo, una demolición de un edificio ya construido en violación de la ley.
Tal poder de paralización puede ser observado en la Sección 5.04 del Reglamento Núm. 6435, sobre Procedimientos Adjudicativos. Dicha sección, establece:
“Si el inspector o funcionario advierte una obra o uso ilegal construida o usada en contravención de alguna disposición de las leyes y reglamentos o del permiso otorgado, podrá ordenar la inmediata paralización de la parte correspondiente de la obra o el cese del uso, bajo las condiciones y criterios dispuestos en la subsección 13.06 de este Reglamento, hasta tanto sea subsanada la condición ilegal o defectuosa. ” (Énfasis nuestro)
En el caso ante nuestra consideración, la ARPE y su Administrador recibieron la autorización de tomar medidas cautelares en lo que se procesa el error señalado en la Opinión del Secretario de Justicia. La pregunta a hacerse es si ésta facultad se limita a la violación de los permisos otorgados —como propone la recurrente — • o también se extiende a las violaciones de todas las leyes pertinentes a la construcción como las que tienen que ver con la zona marítimo-terrestre y las que se refieren a los terrenos ganados al mar.
Conforme surge del texto de la Sección 5.04 citada, al usarse la conjunción disyuntiva “o” (que indica alternativa), nos parece que la ARPE puede tomar esta medida cautelar para dar paso a una investigación por violación a los permisos mismos o también para investigar una posible violación de alguna ley que tenga como consecuencia la posible modificación o revocación de los permisos que ella hubiese otorgado. La interrogante entonces es, si esa interpretación del texto reglamentario es una lectura “forzada y algo atropellada” como la que halló el Tribunal Supremo en Consejo para la Protección del Patrimonio Arqueológico Terrestre de Puerto Rico, supra. Entendemos que no lo es.
Nuestro más Alto Foro reiteró en dicha opinión que el objetivo “es poner en vigor y hacer efectiva la intención del legislador; por lo que nuestra interpretación debe propender a hacer eficaz el objetivo perseguido por el legislador. ” El objetivo del legislador en el caso ante nos es “para que se tomen las medidas preventivas *923 o de control necesarias para lograr los propósitos de este Capítulo [Ley] y de los reglamentos que la Administración deba, por ley, implementar”, Art. 25, supra. A la ARPE se le encomendó asistir en implementar el Art. 11 (14) de la ley habilitadora de la Junta de Planificación.
La facultad para paralizar un proyecto no puede ejercerse en el vacío, por lo que se deben precisar sus contornos. Por ello, resulta necesario analizar las leyes y reglamentos cuyo cumplimiento la ARPE está llamado a verificar, al usar el poder de paralización. En el caso ante nos —más allá de las fuentes invocadas por ARPE sobre sus funciones en tomo a la titularidad del terreno en el que se construye el Proyecto Paseo Caribe y las normas relacionadas con la construcción en propiedad pública — , lo que resulta ser pertinente es la función de la ARPE como brazo operacional de la Junta en la implantación de las normas relacionadas con la zona marítimo-terrestre.
A tenor de lo expuesto, somos del criterio que los permisos otorgados no son impedimento para que la ARPE corrija su error, si es que lo hubo, como arguye la recurrente. Determinamos que la ley habilitadora de la ARPE y su Reglamento de Procedimientos Adjudicativos la autorizan a tomar medidas cautelares como le pidió la Junta que hiciera, para dar paso a la consideración de los méritos de la Opinión del Secretario. Como hemos visto, esto incluye la paralización decretada a los fines de que la Junta, ARPE y los tribunales, acorde con sus respectivas jurisdicciones, estudien el asunto y lo adjudiquen finalmente.
En resumen, concluimos que dentro de los amplios poderes delegados, la ARPE fue dotada con el poder o la autoridad para ordenar la paralización de una obra en construcción como la del Proyecto Paseo Caribe. No se cometió el segundo error señalado por la recurrente.
IV
A
El debido proceso de ley aplicable
En su primer señalamiento de error, SG plantea que ARPE incidió al dejar sin efecto todos los permisos de construcción sin proveerle el mínimo debido proceso de ley. En particular, reclama que la notificación para la vista celebrada el 20 de diciembre de 2007 fue insuficiente e inadecuada en tiempo.
Aunque la recurrente reclama la insuficiencia y lo inadecuado de la notificación como fundamento para que revoquemos el dictamen recurrido, del expediente se desprende que más que una notificación con defectos, a la recurrente se le privó de su derecho a una vista con todas las garantías del debido proceso de ley. Veamos.
En su Opinión, el Secretario recomendó a las distintas entidades gubernamentales involucradas en el proceso de permisología relativo al Proyecto Paseo Caribe que llevaran a cabo "... una exhaustiva reevaluación, de todos los permisos, endosos, evaluaciones, consultas y demás determinaciones tomadas respecto a los mismos”. A tenor de ello, indicó:
“No pretendemos dictaminar el método preciso mediante el cual las distintas entidades gubernamentales concernidas deben proceder con sus reevaluaciones y con cualquier posible paralización de las obras aún en proceso de construcción. En particular, apuntamos que las entidades gubernamentales concernidas deberán proceder al tenor de las leyes y la reglamentación aplicable, salvaguardando siempre cualesquiera derechos procesales y sustantivos que ostenten (sic) las partes afectadas. Así pues, las entidades gubernamentales concernidas deberán ser particularmente cuidadosas y celebrar cualquier vista u otros procedimientos que se requieran a tenor de las leyes pertinentes y el debido proceso de ley.... ”. (Énfasis nuestro)
Así, la Junta ordenó a ARPE que tomara “las medidas cautelares, que considere necesarias, para *924 implementar las recomendaciones del Secretario de Justicia, incluyendo, pero sin limitarse el (sic) celebrar una vista administrativa donde se garantice a las partes el debido proceso de ley. ” 
En cumplimiento con el aludido dictamen, ARPE notificó a la recurrente una orden para mostrar causa ‘‘por la cual no se debe dictar una orden dejando en suspenso los permisos y decretando la paralización de las obras de construcción que se están llevando a cabo en los predios ... por un término de sesenta (60) días.” Puntualizó que para la vista administrativa así señalada “[... la recurrente] tendrá oportunidad y deberá traer consigo todos los documentos y testimonios que entiende para sustentar su posición ”. (Énfasis nuestro)
Sin embargo, conforme a la transcripción sometida con el recurso, al inicio de la vista la Oficial Examinadora aclaró "... que la naturaleza de la Vista no es una adversativa”. (Énfasis nuestro) Indicó que se iba a "... recopilar información de acuerdo a la Orden que se emitiera por esta Administración de Reglamentos y Permisos para que esta agencia pueda tomar una determinación sobre la Orden de Paralización de las construcciones que se están llevando a cabo”. También señaló que no se dilucidaría "... la validez de los permisos otorgados”, recalcando que “la naturaleza de la Vista como dispuso anteriormente, no es adversativa”. 
Resalta del relato expuesto, que el Secretario y la Junta requirieron de ARPE velar por el debido proceso de ley de la recurrente. También surge que en cumplimiento de ese mandato, la ARPE señaló una vista para la cual advirtió a la recurrente que “debería traer consigo todos los documentos y testimonios que entendiere necesarios para sustentar su posición ”.
No obstante, ARPE cambió la naturaleza de la vista a una no adversativa sin previo aviso a la recurrente. Con ello, ARPE incumplió con las directrices emitidas tanto por la Junta como por el Secretario. Además, al cambiar la naturaleza de la vista, la ARPE despojó a la recurrente de las garantías mínimas del debido proceso de ley, máxime cuando es evidente el reclamo de la recurrente sobre su interés propietario en los terrenos en controversia. Cuando median intereses propietarios, como en autos, se fortalece el derecho a una vista con las garantías procesales del debido proceso de ley.
Por otro lado, en el caso ante nos, APRE utilizó el procedimiento adjudicativo de acción inmediata que autoriza la Sección 3.17 de la LPAU, 3 L.P.R.A. see. 2101 et seq. con el fin de agilizar los procedimientos ante ella. Dicha sección dispone lo siguiente:

“(a) Una agencia podrá usar procedimientos adjudicativos de emergencia en una situación en que exista un peligro inminente para la salud, seguridad y bienestar público o que requiera acción inmediata de la agencia.

(b) La agencia podrá tomar solamente aquella acción que sea necesaria dentro de las circunstancias descritas en el inciso (a) precedente y que justifique el uso de una adjudicación inmediata.

(c) La agencia emitirá una orden o resolución que incluya una concisa declaración de las determinaciones de hechos, conclusiones de derecho y las razones de política pública que justifican la decisión de la agencia de tomar acción específica.

(d) La agencia deberá dar aquella notificación que considere más conveniente, a las personas que sean requeridas a cumplir con la orden o resolución. La orden o resolución será efectiva al emitirse.

(e) Después de emitida una orden o resolución de conformidad a esta sección, la agencia deberá proceder prontamente a completar cualquier procedimiento que hubiese sido requerido, si no existiera un peligro inminente. ” (Énfasis nuestro)
*925 En Cervecería Corona, Inc. v. Srio. Obras Públicas, 97 D.P.R. 44 (1969), el Tribunal Supremo validó la actuación sumaria del Estado, sin vista previa, en circunstancias de emergencia o seguridad y ató tal determinación a un juicioso análisis del balance de intereses. En dicho caso, el Tribunal Supremo examinó un procedimiento sumario que utilizó la ARPE para remover unos rótulos que estorbaban en la vía pública. A la pág. 56, el Tribunal expresó lo siguiente:

“Tampoco se justifica limitar el procedimiento sumario, como hizo el Tribunal, exclusivamente a situaciones de emergencia. No hay dudas que en éstas se hace más evidente el elemento de necesidad. Pero hay múltiples casos en que el elemento de necesidad no es tan obvio y hay que acudir entonces, para poder cumplir cabalmente con nuestra función judicial, al origen del estatuto, sus precedentes y el historial legislativo. El proceso para determinar la existencia o no de necesidad y de razonabilidad tomará en cuenta los intereses sociales cuya protección motivó la aprobación del estatuto, la forma en que se protegen los derechos de propiedad de las personas afectadas, la naturaleza del estorbo, incluyendo su valor, dificultad y los costos de procedimientos alternativos para eliminarlo”.

De lo expuesto se desprende que los procedimientos sumarios pueden ser utilizados cuando media una situación que reviste un gran interés público. Ahora bien, tales procedimientos están diseñados para ocasionar la menor lesión posible al debido proceso de ley de los afectados. En razón de ello, la propia sección 3.17 citada requiere que después de emitida la resolución u orden de conformidad con ella, la agencia proceda prontamente a completar el procedimiento que hubiese sido requerido. El Profesor Demetrio Fernández Quiñones refrenda lo antes expuesto al señalar lo siguiente respecto a la sección 3.17:

“El procedimiento inconcluso o que no se hubiera comenzado deberá prontamente llevarse a cabo por la agencia. Subyacente a la validez del procedimiento en situaciones de emergencia se encuentra el principio de que una audiencia será concedida después que se le ha privado de su propiedad o se ha tomado la acción por la agencia. ” 

En el caso de autos, ARPE se amparó en el aludido procedimiento expedito, pero celebró una vista no adversativa previa a emitir la Resolución y Orden recurrida. Conforme a la sección 3.17 de LPAU, la ARPE venía obligada a señalar prontamente una vista luego de emitir el dictamen aquí impugnado. Ello le hubiera provisto a la recurrente del debido proceso de ley que la ARPE menoscabó con su actuación.
En la nota al calce número 7, en Ramos y otros v. Colón y otros, 153 D.P.R. 534, 547 (2001), el Tribunal Supremo expresó que: “el interés en la eficiencia y economía de tiempo no pueden, en balance, prevalecer sobre el derecho constitucional al debido proceso de ley. El debido proceso de ley constitucional no pretende promover los valores de eficacia ni pretende proteger todos los valores humanamente deseables o concebibles, pretende proteger los intereses propietarios de las personas contra quienes se solicita embargar. ”
El no proveer a la recurrente con una vista a tiempo tuvo el efecto también de impedir que la ARPE sopesara los intereses en controversia. Tal balance de intereses es indispensable cuando una parte reclama la protección tanto de su debido proceso de ley como de su interés propietario. Sólo al tomar en consideración ese interés propietario protegido constitucionalmente y contraponerlo al interés público que reviste el asunto ante nos, podía la ARPE cumplir a cabalidad con los requisitos de la sección 3.17 de LPAU y proteger los derechos de la recurrente y del Estado. Por ejemplo, pudo considerar limitar la suspensión de los permisos y la paralización de las obras al área estrictamente en controversia. Dicho de otro modo, pudo haber permitido la continuación de las obras en aquellas áreas del Proyecto Paseo Caribe razonablemente apartadas de los terrenos presumiblemente ganados al mar. Se cometió el primer error apuntado en el aspecto antes analizado.
*926 B
La Opinión del Secretario de Justicia
De otra parte, SG plantea que la agencia, al utilizar la Opinión del Secretario como base de sus actuaciones, usó prueba extrínseca que no obra en el expediente administrativo. En esencia, considera la Opinión un documento ex parte del cual la agencia está impedida de tomar conocimiento oficial por estar emitida por un funcionario de otra agencia. No le asiste la razón.
El Secretario de Justicia es el funcionario de mayor jerarquía dentro del Departamento que representa y dirige el mismo por ser un miembro con rango constitucional del gabinete del Gobernador. Además de representar al Estado en casos criminales y civiles en los tribunales, tiene la autoridad de emitir opiniones y publicarlas, teniendo así la oportunidad de influenciar la política pública del país. In re: Secretario de Justicia, 118 D.P.R. 827, 846-847 (1987). 
Nuestro más Alto Foro, en In re: Secretario de Justicia, supra, se expresó sobre la importancia de las opiniones emitidas por el Secretario de Justicia de la siguiente forma:
“Mucha de la importancia del puesto es el resultado de la función de escribir opiniones. Esta función es única - permite a estos funcionarios influenciar la política pública en modos que muchas veces no son entendidos por el público. En muchos casos, la opinión vincula legalmente a aquellos que la solicitan. Los jueces se abstienen de rendir una opinión hasta que un caso o controversia real haya sido sometida. Pero él puede dar una dirección específica a un funcionario público respecto a conflicto de intereses futuros, reales o potenciales. En algunas jurisdicciones no es necesario que le soliciten esas opiniones. De ordinario, al acatar dicha opinión, el funcionario local o estatal queda relevado de cualquier responsabilidad en una situación conflictiva particular. Aun sin tener esa relación de autoridad sobre los funcionarios, el mero hecho de que pueda emitir opiniones legales puede dejar establecida esa influencia sobre otros cargos, pues el funcionario público sabe que en otras ocasiones tiene que acudir ante él para asesoramiento legal. Ciertamente estará reacio a ignorar el consejo de ese abogado comunicádole públicamente como una opinión oficial. En otras circunstancias, el funcionario público obedecerá los decretos simplemente porque existen. ” (Cita omitida). In re: Secretario de Justicia, Id., nota al calce núm. 12. (Énfasis nuestro)
La facultad que ejerce el Secretario al emitir una opinión, es una de asesoramiento legal que conlleva un dictamen vinculante para el organismo gubernamental consultor. En igual sentido, sus opiniones consignan formalmente el criterio del funcionario ejecutivo de más alto rango en el ámbito de la administración de la justicia, por lo que tienen un gran valor persuasivo.
“Aunque en virtud de la separación de poderes que caracteriza nuestro sistema constitucional, las cortes no vienen obligadas en forma alguna por las interpretaciones que haga un funcionario de otra rama, también en los tribunales tienen valor persuasivo significativo las opiniones del Secretario de Justicia. ” C. Gorrín Peralta, Fuentes y proceso de investigación jurídica, 1991, pág. 258. Véase, L. Muñiz Arguelles y otros, La investigación jurídica, Bogotá, Editorial Temis, 2006, 4ta ed., pág. 258.
La jurisprudencia reiteradamente ha manifestado el valor persuasivo que tienen las opiniones del Secretario de Justicia ante los tribunales. Maldonado v. Junta, 171 D.P.R. _, 2007 J.T.S. 92. No obstante, aunque no alcanzan la autoridad mandatoria que tiene la jurisprudencia del Tribunal Supremo de Puerto Rico, se apunta que: [s]on prácticamente vinculantes para los organismos administrativos. C. Gorrín Peralta, op cit, pág. 259; E. Vázquez Bote, Derecho Civil de Puerto Rico, 1972, T. I, vol. 1, pág. 263.
De igual forma, sus opiniones obligan a las agencias administrativas por constituir la política pública.- “La facultad del Secretario de Justicia de emitir una opinión en virtud de esta sección es de asesoramiento legal y *927 su dictamen es vinculante para el organismo gubernamental consultor, aunque sólo persuasivo para los tribunales. ” Op. Sec. Just. Núm. 20 de 1989.
Resulta necesario señalar que al igual que otros departamentos ejecutivos, cada Secretario de Justicia proyecta su propio estilo profesional y traza las prioridades a alcanzar en la consecución de la política pública establecida según su propio juicio y el del Primer Ejecutivo. In re: Secretario de Justicia, supra, pág. 847. Así, el Tribunal Supremo de Puerto Rico detalló que:
“... hemos de reconocer que, de su faz, es perfectamente legítimo que un Secretario de Justicia pueda sostener una visión administrativa o criterios jurídicos distintos a los de su sucesor u otro. Como corolario de esas diferencias en enfoques y de nueva política pública, pueden surgir conflictos en los distintos órdenes de la comunidad, incluso en asuntos previamente sometidos a los tribunales.” (Citas omitidas). In re: Secretario de Justicia, Id. pág. 848.
A tenor de lo expuesto, la ARPE no erró al utilizar la Opinión del Secretario de Justicia como fundamento para paralizar las obras por 60 días. Dicha Opinión del Secretario constituye una investigación vinculante obligatoria para las agencias de la Rama Ejecutiva aquí concernidas. Además, la ARPE no cuenta con la discreción para descartarla.
Empero, sí erró al no señalar y celebrar una vista posterior a su dictamen de paralización, violándole así el debido proceso de ley a la recurrente, y al no ponderar el balance de intereses. Con ello, también incumplió con las órdenes emitidas por el Secretario de Justicia y la Junta, a los fines de que debía reevaluar los permisos otorgados, pero sin menoscabar las garantías procesales de las partes afectadas.
Y
La extensión de la protección registra!
En su tercer y último error, SG arguye que la ARPE incidió al descartar el texto del Artículo 104 de la Ley Hipotecaria, 30 L.P.R.A. See. 2354, que le obliga a presumir que los derechos regístrales existen y pertenecen al titular registral.
Examinada la Resolución y Orden recurrida, se desprende que la ARPE delimitó su intervención con el Proyecto Paseo Caribe a la concesión y denegación de permisos y no a la titularidad de los terrenos, por razón de que no cuenta con autoridad para ello. Ciertamente, la ARPE no cuenta con facultad delegada para adjudicar la titularidad de los terrenos en donde enclava el proyecto. Son los tribunales los llamados a atender este aspecto de la controversia, de la cual tomamos conocimiento judicial de que está planteada ante el Tribunal de Primera Instancia y será resuelta oportunamente.
Por otro lado, es norma reiterada que el derecho de propiedad sobre un terreno no otorga el derecho a construir sobre éste si no se cumplen los requisitos dispuestos en nuestro ordenamiento. En el caso de autos, se cuestiona tal cumplimiento respecto a una porción de los terrenos del Proyecto Paseo Caribe. Por ello, la ARPE está facultada a suspender la ejecución de los permisos y paralizar las obras provisionalmente hasta que se verifique el cumplimiento de la ley.
VI
Por los fundamentos expuestos, se modifica la Resolución y Orden recurrida y se ordena la celebración —a la brevedad posible— de una vista evidenciaría con todas las garantías del debido proceso de ley. En dicha vista, luego de escuchar la posición de la recurrente, la ARPE deberá evaluar si puede excluir del ámbito de la paralización aquellas áreas del Proyecto Paseo Caribe que razonablemente no afecten los terrenos presumiblemente ganados al mar que están en controversia. Así modificada, se confirma. Finalmente, se declara *928 no ha lugar la Moción en Solicitud de Orden Provisional en Auxilio de Jurisdicción presentada por la recurrente.
Notifíquese de inmediato por teléfono o telefax y por la vía ordinaria.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
El Juez Aponte Hernández disiente con opinión por escrito.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2008 DTA 32
1. Apéndice del recurso, pág. 99.
2. Apéndice del recurso, págs. 87-88.
3. Apéndice del recurso, pág. 202.
4. Apéndice del recurso, pág. 202.
5. Apéndice del recurso, pags. 230-230A.
6. Apéndice del recurso, págs. 233-235.
7. Apéndice del recurso, pág. 235-A.
8. Surge de la resolución recurrida que este reclamo fue atendido por ARPE al exceptuar de la paralización aquellos casos que cuenten con los permisos de uso.
9. Integrado por su Presidente el Juez Carlos Rivera Martínez y las Juezas Hernández Torres y Carlos Cabrera.
10. “Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico . . . Una orden o resolución interlocutoria de una agencia, incluyendo aquéllas que se emitan en procesos que se desarrollan por etapas, no serán revisables directamente’’ (Énfasis nuestro). 3 L.P.R.A. See. 2172.
11. Procuradora Paciente v. MCS, supra, citando a Guadalupe v. Saldaña, Pres. U.P.R., 133 D.P.R. 42 (1993).
12. Existe, sin embargo, “la norma de autoinflicción del daño”, Fuertes Guillermety v. A.R.P.E., supra. En Empresas Ferrer v. ARPE, res. el 2 de octubre de 2007, 2007 JTS 181, 172 D.P.R. _ (2007), el Tribunal Supremo expuso el contenido de tal norma al señalar que:
“[A]l adquirir la propiedad, se presume que su nuevo dueño la obtuvo con conocimiento de las limitaciones a las que estaba sujeta, por lo que no puede entonces premiársele permitiéndole que la utilice para un fin contrario éstas. (...) De hecho, hemos expresado que el conocimiento previo de estas restricciones debilita sus posibilidades de éxito en los tribunales. ” (Citas omitidas)
13. Apéndice del recurso, pág. 487.
*929 14. Apéndice del recurso, pág. 187, nota al calce núm. 18.
15. Apéndice del recurso, pág. 88.
16. Apéndice del recurso, pág. 202.
17. Apéndice del recurso, págs. 230 y 230-A.
18. Fernández Quiñones, Derecho Administrativo y Ley de Procedimientos Administrativo Uniforme, Forum, 2001, pág. 202.
19. Respecto a su función de emitir Opiniones de la Ley Orgánica del Departamento de Justicia dispone:

“El Secretario de Justicia dará su opinión por escrito al Gobernador, a la Asamblea Legislativa, o a cualquiera de sus Cámaras, al Contralor de Puerto Rico, a los jefes de agencias y de las corporaciones públicas, cuando medie una resolución de su Junta de Directores autorizando la solicitud, sobre cuestiones de derecho que se susciten en el ejercicio de sus funciones. Asimismo, dará su opinión a los alcaldes de los municipios, en cuyo caso la solicitud debe ser tramitada a través de la Oficina del Comisionado de Asuntos Municipales. En el caso de las legislaturas municipales, se requerirá una resolución de la legislatura correspondiente autorizando a su presidente a solicitar la opinión.

Se faculta al Secretario para adoptar las normas que regirán la solicitud y emisión de las opiniones. Cuando la cuestión que se plantea en la solicitud de opinión está ante la consideración de un tribunal, el Secretario se abstendrá de opinar formalmente en tomo al asunto, mas podrá asesorar al funcionario si entiende que es necesario para que éste pueda continuar desempeñando las funciones que le impone la ley, sin menoscabo de la facultad que corresponde al Poder Judicial como intérprete final de la Constitución y las leyes del Estado Libre Asociado.” 3 L.P.R.A sec. 292c.
VOTO DISIDENTE DEL JUEZ NÉSTOR S. APONTE HERNÁNDEZ 2008 DTA 32
San Juan, Puerto Rico, a 6 de febrero de 2008
Disentimos de la opinión mayoritaria por entender que la Administración de Reglamentos y Permisos (ARPE) no tiene jurisdicción ilimitada para dejar sin efecto permisos finales y firmes expedidos por dicha agencia conforme a la ley, ante meras alegaciones sobre la posible imperfección de los títulos de los terrenos en los cuales se desarrolla la obra. De conformidad con lo anterior, procederíamos a dejar sin efecto la orden de paralización de obra emitida por ARPE, según solicitado por la recurrente.
Las determinaciones administrativas, al igual que las judiciales, tienen que, en algún momento, advenir inatacables. En el ámbito judicial, la Regla 49.2 de Procedimiento Civil limita la facultad de los Tribunales para corregir sus errores. En el ámbito administrativo debemos recurrir a los reglamentos de la agencia y a la Ley de Procedimiento Administrativo Uniforme (LPAU).
Parece evidente que luego de que el proceso de obtención de permisos concluye, la jurisdicción de ARPE queda limitada a velar por el cumplimiento con lo autorizado. Así surge de las secciones 5.01 y 5.04 del Reglamento de Procedimientos Adjudicativos de la Administración de Reglamentos y Permisos, Reglamento Núm. 6435 vigente desde el 16 de abril de 2002. En armonía con lo anterior, le corresponde al tribunal con jurisdicción atender la impugnación de los títulos de los terrenos de Paseo Caribe y emitir cualquier orden que en auxilio de su jurisdicción estime necesaria.
La ARPE reconoce que no puede dilucidar el planteamiento sobre la titularidad de los terrenos. Sin embargo, la opinión mayoritaria trata de justificar la intervención de la agencia bajo el fundamento de que ésta *930 puede corregir el ‘alegado error de haber autorizado la construcción del Proyecto Paseo Caribe sobre terrenos ganados al mar’.
No podemos concurrir con la opinión mayoritaria. La misma pierde de perspectiva que una mera inspección ocular por los funcionarios de ARPE no será suficiente para determinar si algunos de los terrenos comprendidos en el referido proyecto son parte de la zona marítimo-terrestre. No lo fue cuando autorizaron el proyecto, y no lo será al presente porque las características físicas del área se mantienen en idéntico estado. Hacer una determinación en ese sentido requerirá un estudio mucho más profundo que una mera inspección ocular.
Además, requerirá una determinación judicial para controvertir la presunción establecida mediante el Artículo 104 de la Ley Hipotecaria, la cual dispone que “[a] todos los efectos legales se presumirá que los derechos registrados existen y pertenecen a su titular en la forma determinada por el asiento respectivo. ” [...] Más importante aún, dicho artículo también dispone que:

“Como consecuencia de lo dispuesto anteriormente, no podrá ejercitarse ninguna acción contradictoria del dominio de inmuebles o derechos reales inscritos a nombre de un titular determinado, sin que previamente o a la vez se pida en demanda judicial la corrección, nulidad o cancelación de la correspondiente inscripción, cuando proceda”,

No surge de los autos que se haya iniciado acción judicial alguna para controvertir la presunción de legalidad de los títulos de Paseo Caribe. Por tanto, hasta que ello no ocurra, ARPE está obligada a reconocer como buenos los referidos títulos, y en consecuencia, está impedida de invocar la posibilidad de error al conceder los permisos en controversia, basada en la alegación de que dichos terrenos incluyen zona marítimo-terrestre.
Por otra parte, ARPE no puede mantener en suspenso los permisos de Paseo Caribe por si en algún momento futuro los títulos de Paseo Caribe quedan impugnados por los tribunales. Recuérdese que, reiteradamente, se ha resuelto que los casos no pueden tener vida eterna. Carattini v. Collazo Sist. Análisis, Inc., 158 D.P.R. 345 (2002); Madera Meléndez v. Negrón, 103 D.P.R. 749 (1975). Además, le corresponde a los tribunales determinar el justo balance entre los intereses en controversia, pues conforme a lo resuelto por el Tribunal Supremo cuando una persona a quien se le ha expedido un permiso de construcción por un funcionario debidamente autorizado incurre, a base del mismo, en gastos sustanciales, logra en virtud de la construcción un derecho adquirido que no puede serle destruido por virtud de una revocación del permiso en cuestión. Phi Delta Phi v. Junta de Planificación, 16 D.P.R. 585 (1954).
Finalmente, debemos consignar nuestra preocupación en cuanto a que la orden de ARPE señala como una situación de “emergencia” para invocar su jurisdicción a tenor con la sección 3.17 de la LPAU, cuya disposición entendemos que no es adecuada para atender el asunto en cuestión, el que “se han generado varios incidentes que pueden afectar la seguridad del personal de dicho proyecto y de los ciudadanos que se han estado manifestando en las inmediaciones de los terrenos”. ¿Cuál es el mensaje que se está enviando?
Néstor S. Aponte Hernández
Juez de Apelaciones
ESCOLIOS VOTO DISIDENTE DEL JUEZ NÉSTOR S. APONTE HERNÁNDEZ - 2008 DTA 32
1. 31 L.P.R.A. Ap. HI, R. 49.2.
2. 30 L.P.R.A. sec.2354.